**Homer Lee COATS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 1069–84.**

Court of Criminal Appeals of Texas, En Banc.

June 25, 1986.

Bob Tarrant, Houston, for appellant.

William A. Meitzen, Dist. Atty. and Steven R. Rosen, Asst. Dist. Atty., Richmond,

Robert Huttash, State's Atty., Austin, for State.

OPINION ON APPELLANT'S PETITION
FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted of the offense of Theft. See V.T.C.A. Penal Code, § 31.-03(a). Punishment was assessed by the trial court at twelve years in the Texas Department of Corrections and a $2,500.00 fine. The Fourteenth Court of Appeals affirmed. *Coats v. State*, 681 S.W.2d 187 (Tex.App.—Houston [14th] 1984). We granted petition for discretionary review to determine if the Court of Appeals erred in holding that appellant's motion to quash the indictment for failure to allege the method of appropriation was properly overruled by the trial court, in conflict with the holding of the Third Court of Appeals in *Scott v. State*, 646 S.W.2d 638 (Tex.App.—Austin 1983).[1] We will reverse the Court of Appeals and hold that appellant's motion to quash should have been granted. Nonetheless, we will remand this cause in light of this Court's recent opinion in *Adams v. State*, 707 S.W.2d 900 (Tex.Cr.App.1986).

Appellant was charged by indictment with theft over $10,000. The relevant phrase in the indictment charged the appellant "did then and there unlawfully, intentionally, and knowingly appropriate property, to wit: cash money, in the amount of $10,000.00 or more". The appellant filed a timely, written motion to quash based upon the failure of the indictment to allege the method of appropriation, see V.T.C.A. Penal Code § 31.01(5), thereby failing to give him adequate notice of the unlawful conduct in which he was to have engaged.

The motion to quash was overruled by the trial court.

The Court of Appeals, in conflict with two other Courts of Appeals, *Scott v. State*, 646 S.W.2d 638 (Tex.App.—Austin 1983), no pet., and *Bertram v. State*, 670 S.W.2d 305 (Tex.App.—Amarillo 1983), pet. ref'd., held that since the property alleged to have been taken was cash money, the only manner in which appropriation could have been accomplished would have been by possession. See § 31.01(5)(A), supra. In *Ferguson v. State*, 622 S.W.2d 846 (Tex. Cr.App.1981), this Court held that if a statute defined an act or omission in more that one manner, then a timely, specific motion to quash should be granted. Subsequently, we have determined that the rationale of *Ferguson*, supra, is applicable to an indictment charging an unlawful appropriation under V.T.C.A. Penal Code § 31.03(a). *Gorman v. State*, 634 S.W.2d 681 (Tex.Cr. App.1982)[2]; *McBrayer v. State*, 642 S.W.2d 504 (Tex.Cr.App.1982); *Coleman v. State*, 643 S.W.2d 124 (Tex.Cr.App.1982).

In holding that the indictment in this cause was sufficient, the Court of Appeals relied upon the nature of the property appropriated. The Court of Appeals reasoned that the "nature of cash money denies any possible nonpossessory interest." However, in this advanced electronic era, money is frequently transferred without passing from the actual possession of one individual to another. Thus, we believe that cash money can in fact be appropriated by "transfer or purported transfer of title to or *other nonpossessory interest* in property".[3] See § 31.01(5)(A).

In *Scott*, supra, and *Bertram*, supra, the Courts of Appeals were reviewing indictments that charged the theft of lawful U.S. currency. The Court of Appeals in *Scott*, supra, reasoned:

§ 31.01(5)(A), required some consent; an indictment that alleges "without consent of any kind" necessarily alleges appropriation through "possession" as defined in § 31.01(5)(B).

---

**1.** See Tex.Cr.App.Rule 302(c)(1).

**2.** This Court has carved out what appears to be a limited exception to the *Gorman* rule in instances where the indictment further alleges that the appropriation was without consent of any kind. *Lewis v. Sate*, 659 S.W.2d 429 (Tex. Cr.App.1983). In *Lewis*, supra, we reasoned that nonpossessory appropriation, as defined in

**3.** All emphasis supplied by the writer of this opinion unless otherwise indicated.

The state argues that *McBrayer, Coleman,* and *Gorman, supra* do not control this case because they do not involve the theft of currency. In the State's view one can never have a nonpossessory interest in currency, therefore Sec. 31.-05(A) is never applicable to such a case. We disagree. In its original panel opinion in *Gorman,* the Court [of Criminal Appeals] said that, "interests in ... **'goods'** do not require possession to exist." [emphasis in original] The court [of Criminal Appeals] cited Tex.Bus. & Com.Code, Sec. 2.105(a) (1968) in support of this proposition. That section defines "goods" to include money, except as it is used in payment for other goods. See Tex.Bus. & Comm. Code sec. 2.105(a) "Uniform Commercial Code, Comment" wherein it is stated, "goods is intended to cover the sale of money when money is being treated as a commodity". Accordingly, we cannot say that there can be no instances where § 31.01(5)(A) would be applicable to the theft of currency. *Scott, supra,* at 639. Accord, *Bertram, supra.*

The Court of Appeals in the instant case noted that the Texas Supreme Court has recently held that money is not "goods or chattels". *Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169 (Tex.1980). Such reliance is misplaced. The opinion in *Riverside Nat'l Bank, supra,* was concerned only with the definition of "goods" as regulated by the Deceptive Trade Practices Act. Therefore, the Texas Supreme Court's interpretation of the definition of "goods" is not dispositive in this case. The Penal Code prohibits the theft of property, and property is defined as "a document, in .uding money, that represents or embodies

anything of value" V.T.C.A. Penal Code, § 31.01(6)(c).

■ This Court in *Gorman, supra,* was concerned with the nature of personal property, a 'Hasselblad camera'. Our reference to the Texas Business and Commerce Code provided a readily accessible body of law pertaining to the transfer and sale of such goods. See *Gorman, supra* at 683. While the Texas Business and Commerce Code may have assisted this Court when reviewing indictments alleging the theft of consumer goods, see, *Gorman, supra* (a camera), *McBrayer, supra* ('Blue Nun' wine), and *Coleman, supra* (four men's suits), statutory interpretation of what constitutes 'goods' for the purposes of the Texas Business and Commerce Code or the Deceptive Trade Practices Act is not dispositive of the question of whether, under the Texas Penal Code, cash money may be appropriated other than by possession. As Justice Smith pointed out in *Scott:* "§ 31.01(5)(B) indicates that there can be more that one method of appropriation under that subsection alone since it defines appropriation as occuring whenever one acquires, 'or otherwise exercises control over property.'" *Scott, supra* at 639.

As noted infra, money or interest in money is transferred in several diverse ways. For example, electronic bank transfers permit a banking institution to transfer funds from one account to another, or even to a different institution, upon instructions from the owner of the money. So called "debit cards"[4] permit the holder of the card to obtain cash or transfer funds from one account to another without ever obtaining physical possession of the actual cur-

---

**4.** We note that the Texas Legislature has now made the use of 'debit cards' a separate and distinct offense. V.T.C.A. Penal Code § 32.50 (supp. 1986), effective September 1, 1985.

Testimony before the House Committee on Financial Institutions indicated that prior to the enactment of § 32.50 the only recourse for an unauthorized use of a debit card was the *theft statutes.* Deputy Lieutenant Collin Jordan, representing 'all the Texas police officers' testified that all the 'thugs' on the streets were aware that

if they obtained only $500.00 per transaction [sic], criminal sanctions did not extend beyond misdemeanor prosecution. The consensus of testimony was that the offense of Debit Card Abuse be fashioned after the offense of Credit Card Abuse, see V.T.C.A., Penal Code § 32.31. House Committee Hearing on HB 220, February 25, 1985 (tape.) Clearly both statutes are intended to regulate the unauthorized use of such cards, without regard to the value of the property stolen.

rency.[5] Clearly, money or currency is frequently transferred without the owner of the currency being in actual possession of the money; a nonpossessory interest in currency is not only possible, it has become a common method of transferring currency. Appellant could have effected an unlawful transfer of funds from the complainant's bank account to his own. The theft would be complete upon the crediting of the transfer to appellant's account, even though the appellant was not in possession of the cash money.

■ For the foregoing reasons, we hold that money can be appropriated, either by acquiring or otherwise exercising control over property, or by bringing about a transfer of title or **other nonpossessory** interest in the property. See, V.T.C.A. Penal Code § 31.01(5), supra. Insofar as the Court of Appeals held that the term 'appropriate' need not be further defined when the property alleged to have been stolen is cash money, it is mistaken.

This Court recently held that, before a conviction will be reversed on the basis of a motion to quash a charging instrument, an appellate court must make a review of the record to determine whether the 'substantial rights of the defendant' were harmed, by the erroneous overruling of a motion to quash. *Adams*, supra. We will therefore remand this cause to the Court of Appeals for a determination of whether the substantial rights of the appellant were harmed by the trial court's erroneous denial of his motion to quash.

The judgment of the Court of Appeals is reversed and the cause is remanded to that Court for further consideration in light of *Adams*, supra.

CLINTON, J., concurs for reason stated in *Scott v. State*, supra.

TEAGUE, J., dissents to the remand as he would have this Court now decide whether the appellant was harmed.

ONION, Presiding Judge, dissenting.

This case is a good example of why *Adams v. State*, 707 S.W.2d 900 (Tex.Cr.App. 1986), is not good law. I would reverse the judgments of the Court of Appeals and trial court. The motion to quash should have been granted.

(1979) wherein cash is defined as 'money or the equivalent; usually cash money, currency and coins, negotiable checks, and balances in bank accounts.'